**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


PC Connection, Inc.


    v.                                              Civil No. 07-cv-054-SM

Crystal Courson, d/b/a/
pcconnectionusa and
PC Connection;
Shopster E-Commerce, Inc.
d/b/a/ Secure2U; and
US Website Builder, LLC



**REPORT AND RECOMMENDATION**

     Plaintiff PC Connection, Inc. ("PC Connection") initiated this action by moving for temporary and preliminary injunctive relief against all three defendants. See Document no. 4. PC Connection is a leading marketer and seller of computer products, electronics, and related goods and services, and uses the registered trademark "PC Connection," and various derivatives thereof, in its business operations. It asserts here that defendants began using the phrase "PC Connection" to identify themselves in the market as a seller of computers and related products. Naturally PC Connection wants to protect its trademark and has moved to stop defendants' misappropriation of it. An

evidentiary hearing was held on March 23, 2007, at which only defendant Shopster E-Commerce, Inc., d/b/a Secure2U ("Shopster")[1] appeared.  This Report and Recommendation addresses just the defenses raised by Shopster in its pleadings and at the hearing.[2]  For the reasons set forth below, I recommend that the requested injunctive relief be denied.

## Discussion

### 1.  Background

Defendant Crystal Courson, together with her husband (the "Coursons"), began an "e-business" called "ecrater.com" to sell computer equipment and related products in December 2006.  The Coursons needed an internet "store front" to assist them with marketing their business, including both filling orders and processing payment.  Shopster offers this kind of service to companies selling products on the internet, describing itself as

---

[1] While the parties dispute whether Shopster actually does business as Secure2U or whether Secure2U is a wholly-owned subsidiary of Shopster, the corporate relationship between the two does not affect the disposition of the preliminary injunction motion.

[2] Previously I recommended the requested injunctive relief be granted against the other two defendants in this action, US Website Builder, Inc. and Crystal Courson.  See Document nos. 16 and 17.

an internet "shopping mall," whereby a myriad of stores set up "store fronts" on its host site for a price and receive order processing assistance in return.  In other words, Shopster's business is not to sell the product, but to host businesses that sell products and then to service the sale once made.

On January 3, 2007, Crystal Courson responded to a 7-day free trial agreement that Shopster offered.  Pursuant to that agreement, a "store front" at www.secure2U.com was set up for the Coursons' business.  At the end of the free trial period, the agreement between Shopster and the Coursons was not extended.  Instead, the Coursons contracted with defendant US Website, LLC ("US Website") to market their business.  US Website helped the Coursons develop a domain name and modified their web site to incorporate the name "PC Connection."  The domain name selected was "pcconnectionusa.com," the web site prominently displayed "PC Connection," and its URL was www.pcconnection.secure2u.com.  In February 2007, as part of a regular trademark watch report, PC Connection was informed of the use of these names.  It promptly notified all three defendants of their alleged infringement through cease and desist letters.  Although the Coursons told US Website to remove any reference to "PC Connection" on the web

site and web addresses related to them, US Website did not comply with that request.[3]

Shopster contends that until it received plaintiff's cease and desist letter on February 27, 2007, it was unaware of the trademark "PC Connection," or of the Coursons' use of the domain name pcconnectionusa.com.  Shopster now asserts that immediately upon learning of the trademark, it notified the Coursons to stop using it.  Although the Coursons and US Website had created the URL www.pcconnection.secure2U.com, Shopster claims it had no connection to, nor did it provide any services for, the Coursons or pcconnectionusa.com.  It also contends it was unaware that the Secure2U logo, along with other Shopster copyrighted material, was posted on the Coursons' web page.  After learning this information, Shopster lodged its own complaint against US Website,[4] demanding US Website remove references to both Shopster and Secure2U from its website.

---

[3] The Coursons have not appeared in this action; however, at the evidentiary hearing, counsel for PC Connection proffered an affidavit from them in which they agreed to the injunctive relief sought.  Accordingly, I previously recommended the requested injunction against them be granted.  See Document no. 17.

[4] It also complained to the apparent registrar of the challenged domain name, Godaddy, Inc., which is not a party to this action and is not relevant to the disposition of this motion.

4

At the March 23 hearing, Shopster argued the injunction against it should not issue, because it had stopped its association with the Coursons in early January, after the initial free trial period had expired and, therefore, could not have been involved with the Coursons' infringing use of the name PC Connection.  Based on representations asserted in Shopster's Verified Answer (document no. 11) and evidence proffered at the hearing, however, the record is somewhat unclear about Secure2U's connection to pcconnectionusa.com, and to what extent the relationship between the two names was authorized and by whom.

On the one hand, Shopster seems to admit that it knew the Coursons called their business "PC Connection" but did not know that it was a registered trademark.  Shopster indicated that its subscribers choose the names for their webpages and are solely responsible for ensuring the selected name does not violate any intellectual property rights.  <u>See</u> Document no. 11, ¶16. Apparently Shopster adds a subscriber's selected name into the [www.secure2u.com](www.secure2u.com) URL, which then distinguishes that particular "store front" from the many it is hosting.  It represented that the Coursons, not it, were responsible for determining whether "PC Connection" could be used, and that it did not knowingly

infringe plaintiff's rights when it hosted the Coursons' business at www.pcconnection.secure2u.com.  See id.  Shopster states there was no activity on the site during the free trial period and that it suspended all service to the Coursons and the website after January 17, 2007.

On the other hand, Shopster points to US Website as the source of the infringing conduct.  It claims that the challenged URL and domain name that incorporate pcconnectionusa were derived from US Website, after the Coursons' relationship with Shopster had ended.  See Document no. 11, ¶¶ 4 and 15.  It asserts that it "never provided services of any kind, at any time, to pcconnectionusa.com – the website set up by Courson on January 31, 2001. . .."  Id. ¶16.  At the hearing, counsel for Shopster represented that Shopster not only was not involved in creating the challenged domain name or URL, but also that it immediately withdrew sponsorship of the website as soon as it was made aware of the alleged infringement.  It is that "sponsorship of the website" that is the root of the confusion about what, if any, Shopster's continued involvement with pcconnectionusa.com was after its agreement with Crystal Courson ended on January 17, 2007.

Exhibits offered at the hearing provided conflicting evidence of Shopster's continued involvement with the Coursons' marketing efforts.  The Coursons identified their business with the domain name www.pcconnectionusa.com, which does not reference Shopster or Secure2U.  See e.g. Pl.'s Exs. 15, 16 and 17.  Yet, in the six weeks that intervened between the termination of the agreement between Shopster and Crystal Courson, and Shopster's receipt of plaintiff's cease and desist letters, the Coursons continued to use the URL www.pcconnection.secure2u.com.  See Pl.'s Ex. 18.  The web page also described their business, "PC Connection," as a "Secure2U Preferred Partner."  See Pl.'s Ex. 19.  If, in fact, Shopster had terminated its relationship with the Coursons on January 17, 2007, there should have been no relationship with Secure2U indicated on the Coursons' web page. Whether or not that identified partnership was legitimate or misrepresented was not resolved at the hearing, nor is it clear from the current record.  What is clear is that the continued use of "Secure2U," whether or not authorized, has linked Shopster to the Coursons' and US Website's infringing use of the name "PC Connection."

At the hearing, Shopster represented that any and all

reference to "Secure2U" has been removed from the infringing web sites, and that it has, in good faith, tried to prevent any further infringing use of the name "PC Connection."  The evidence showed that Shopster in fact already has stopped using the words "PC Connection," in any domain name, URL or web page associated with it.  Shopster provided a letter to the court dated February 27, 2007, in which it informed PC Connection's counsel that it had "disabled the Shopster supported store front located at www.pcconnection.secure2u.com and [had] advised our customer of the issue."  See Def.'s Ex. 1.  Counsel for Shopster also told the court that Shopster would agree to assign any right, title or interest in the domain name pcconnectionusa.com it might have to plaintiff.  Finally, plaintiff's counsel confirmed Shopster's representations by informing the court that since March 2, 2007, there has been no ongoing harm with respect to Secure2U, because Shopster had removed the pcconnectionusa.com web page from its host site.

   2.  Preliminary Injunction Standard

   Preliminary injunctive relief is available to protect the movant from irreparable harm, so that party may obtain a meaningful resolution of the dispute after full adjudication of

the matter. Such a situation arises when some harm from the challenged conduct could not be adequately redressed with traditional legal or equitable remedies following a trial. See Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 18 (1st Cir. 1996) (finding irreparable harm where legal remedies are inadequate); see also Acierno v. New Castle County, 40 F.3d 645, 653 (3rd Cir. 1994)(explaining irreparable harm and its effect on the contours of preliminary injunctive relief). The purpose of preventing irreparable harm is to enable the court to render a meaningful disposition on the underlying dispute. See CMM Cable Rep. v. Ocean Coast Props., 48 F.3d 618, 620-21 (1st Cir. 1995)(explaining the purpose of enjoining certain conduct as being to "preserve the 'status quo' . . . to permit the court more effectively to remedy discerned wrongs"). The court's focus, therefore, must always be on the underlying merits of the case, and what needs to be done to ensure that the dispute can be meaningfully resolved.

A preliminary injunction cannot issue unless the moving party satisfies four factors which establish its need for such relief. See Esso Standard Oil Co. v. Monroig-Zavas, 445 F.3d 13, 17-18 (1st Cir. 2006) (discussing the requisite showing to obtain

a preliminary injunction); see also Ross-Simons of Warwick, Inc., 102 F.3d at 18-19 (explaining the burden of proof for a preliminary injunction). Those factors are: "(1) the likelihood of success on the merits; (2) the potential for irreparable harm [to the movant] if the injunction is denied; (3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and (4) the effect (if any) of the court's ruling on the public interest." Esso Standard Oil Co., 445 F.3d at 18. If the plaintiff is not able to show a likelihood of success on the merits, the remaining factors "become matters of idle curiosity," id., insufficient to carry the weight of this extraordinary relief on their own. See id. Yet, "the predicted harm and the likelihood of success on the merits must be juxtaposed and weighed in tandem." Ross-Simons of Warwick, Inc., 102 F.3d at 19.

### 3. Analysis

At this very preliminary stage of review, based on the evidence before the court, I find that PC Connection has failed to meet its burden of proof to justify the relief sought. Most persuasive, and nearly dispositive of the matter standing alone,

is the undisputed fact that Shopster has discontinued using the words "PC Connection" in any manner associated with it, or its internet counterpart, Secure2U.  See e.g. Gucci America Inc. v. Daffy's Inc., 354 F.3d 228, 230-31 (3rd Cir. 2003) (discussing district court's decision to deny preliminary injunction where defendant removed counterfeit product from store after receiving demand letter).[5]  Based on plaintiff's own representation to the court, as of March 2 the challenged infringement by Shopster has stopped.  Under such circumstances, the requested temporary and preliminary injunctive relief has become moot.  See Polo Fashions, Inc. v. Dick Bruhn, Inc., 793 F.2d 1132, 1135 (9th Cir. 1986) (ending of unlawful conduct can moot the dispute); see also 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 30:50 (4th ed. 2007) (explaining the preliminary injunctive goal of preserving the status quo means "the situation prior to the time the junior user began use of its contested mark: the last peaceable, noncontested status").

   PC Connection also has not demonstrated the likelihood of

---

   [5]The procedural record here provides further assurance that the alleged infringement will not continue.  In two prior Report and Recommendations, I recommended that the requested injunctive relief be granted with respect to the Coursons, who had agreed to discontinue their infringing use of the name, and US Website.  See Document nos. 16 and 17.

success on the merits of its trademark infringement or cyberpiracy claims.  A critical element of both claims is defendant's use of the trademark.  See Star Fin. Servs. v. AASTAR Mortgage Corp., 89 F.3d 5, 9 (1st Cir. 1996) (listing elements of a trademark infringement claim); see also DaVinci Tech. Corp. v. Rubino, No. Civ. 05-1561, 2005 WL 1249462, at *7 (D.N.J. May 25, 2005) (citing 15 U.S.C. § 1125(d) for elements of a cyberpiracy claim).  Both claims also factor in defendant's intent when the infringing use occurred.  See id. (requiring defendant to have intended to profit from plaintiff's mark in bad faith); see also Star Fin. Servs., 89 F.3d at 11 (explaining how defendant must intend to confuse regardless of whether in good or bad faith); see also Int'l Ass'n of Machs. v. Winship Green Nursing Ctr., 103 F.3d 196, 201 (1st Cir. 1996) (listing factors which contribute to the intended confusion).  The evidence before the court does not clearly establish what the relationship between Shopster and Secure2U is for purposes of (i) determining whether they are one entity or two distinct legal entities, and (ii) attributing Secure2U's affiliation with the Coursons and their continued infringing use of the trademark to Shopster.  The record was similarly confusing about whether the Coursons' use of the URL

www.pcconnectionusa.secure2u.com was unauthorized or the result of some continuing business relationship with Shopster after the January 17, 2007 termination of the free trial agreement.  PC Connection simply did not show that Shopster intended to use the infringing domain name or URL.  While discovery should explain the relationship between the parties and should reveal who intended to exploit the "PC Connection" trademark, the current record provides no such clarity.  Under such circumstances, a preliminary injunction is not warranted.  See e.g. 5 McCarthy, supra, § 30:45 (even under the lenient standard afforded trademark cases, serious factual disputes that could only be determined after a full trial preclude preliminary injunctive relief).

   The likelihood of confusion to the public and resulting damage to plaintiff's business reputation caused by defendant's infringing use of plaintiff's trademark can support a finding of irreparable harm in trademark infringement cases.  See id. § 30:46.  Here, however, because the allegedly infringing conduct has stopped, the irreparable harm that PC Connection might suffer pending final adjudication of this dispute has been eliminated.  While the harm PC Connection may have suffered from Shopster's

unauthorized, infringing use of its trademark is fairly deemed irreparable, the remedy is to stop the conduct, as the damages are difficult to quantify following a full trial on the merits. By PC Connection's own admission, the offending conduct has stopped; accordingly, it has not shown irreparable harm under the current circumstances.

Although the record persuades me that preliminary injunctive relief need not be ordered at this time, that conclusion has no bearing on plaintiff's likelihood of ultimately obtaining a permanent injunction against Shopster in this matter.  It is well settled that an injunction is the usual remedy once trademark infringement has been found.  See id., § 30:1 (quoting The Lanham Act which codifies that remedy); see also Polo Fashions, Inc., 793 F.2d at 1135-36 (ordering permanent injunction to protect trademark holder from future infringement); cf. Gucci America, 354 F.3d at 238-39 (affirming denial of permanent injunction where facts demonstrated defendant did not intend to exploit plaintiff's mark or confuse the public and had stopped all infringing conduct immediately upon being informed of the problem).  If plaintiff can prove trademark infringement, irreparable harm necessarily follows, and both the equities and

the public interest would favor enjoining Shopster to eliminate any risk of further infringement in the future. That conclusion, however, cannot be made on the current record before the court.

## Conclusion

For the reasons set forth above, I recommend that plaintiff's Motion for Temporary and Preliminary Injunctive Relief (document no. 4) be denied with respect to defendant Shopster. Any objections to this report and recommendation must be filed within ten (10) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the district court's order. See Unauthorized Practice of Law Comm. v. Gordon, 979 F.2d 11, 13-14 (1st Cir. 1992); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986).

_____
James R. Muirhead
United States Magistrate Judge

Date:  April 9, 2007

cc:    George T. Campbell, III, Esq.
       Steven E. Grill, Esq.